```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMERICAN HOMEPATIENT, INC.,

                    Plaintiff,                    05-CV-6322

          v.                                      DECISION
                                                  and ORDER
TIMOTHY CONNORS, and BUFFALO
WHEELCHAIR, INC. d/b/a PRO2CAIR,

                    Defendants.
_____
```

## INTRODUCTION

Plaintiff American HomePatient, Inc., ("AHP"), proceeding pursuant to this court's diversity jurisdiction, brings state law contract claims against its former employee defendant Timothy Connors ("Connors") and his current employer defendant Buffalo Wheelchair, Inc. d/b/a Pro2Cair ("Pro2Cair") claiming that Conners has violated a non-compete agreement that he entered into while employed with AHP. Specifically, the plaintiff contends that Conners violated the non-compete agreement by commencing employment with Pro2Cair, a competitor of AHP. AHP seeks damages based on the defendants' alleged breach of contract and unfair competition.

For determination are defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment. For the reasons set forth below, I hereby grant defendants' motion for summary judgment, and grant-in part and deny in-part plaintiff's cross motion for summary judgment.

**FACTUAL BACKGROUND**

Connors commenced his employment with AHP on August 16, 2000. AHP provides medical equipment in the Corning, New York area for patients use at home. Examples of the types of equipment sold are: respiratory products, wheelchairs, and hospital beds. AHP provides its products to patients who are often referred to AHP through physicians, hospitals, nursing homes, discharge planners, or other health care professionals. Connors worked as a general manager at AHP, and in that capacity, was responsible for all aspects of the Corning location's performance, including generation of sales and revenues. Connors was involved in marketing and soliciting business relationships with several business referral sources including doctors, nurses, and administrative personnel at hospitals and nursing homes.

Upon commencement of his employment with AHP, Connors entered into a confidentiality and non-compete agreement ("Agreement"). Under the terms of that Agreement, Connors agreed, in relevant part, not to:

> [D]irectly or indirectly through any partnership, corporation, or business entity in which [Connors] has an ownership or interest or serves as an officer or employee of or as a consultant for, solicit, divert or take away the business of, any of the <u>customers</u> of the company that were served by [Connors] during the term of his . . . employment or any prospective customers of the Company that the [Connors] actively solicited on behalf of the company within the immediately preceding year, for the purpose of

>           making sales or rentals of home health care
>           devices or supplies.

(Emphasis added).

After working for AHP for over four years, Conners' employment was terminated on December 16, 2004, for allegedly having made inappropriate expenditures of company funds. Four months later, on April 25, 2005, Connors accepted employment as a sales representative with Pro2Cair, one of AHP's competitors. As a sales representative, Connors meets with hospital and nursing home representatives, doctors, and nurses to persuade them to recommend the use of Pro2Cair equipment to their patients. AHP contends that such solicitation violates Connors' non-compete agreement because he is soliciting former or prospective AHP customers. Defendants contend that because the "customers" of the AHP and Pro2Cair's are actually the end users who purchase the equipment, and not the doctors, nurses, or administrative personnel who may or may not make recommendations as to which equipment should be purchased, Connors has not violated the Agreement because he has not solicited any customers.

## DISCUSSION

I.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment as a matter of law where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that

there is no genuine issue as to any material fact." F.R.C.P. 56(c) (2003). The party seeking summary judgment bears the burden of demonstrating that no material issue of fact exists. In deciding a motion for summary judgment, the Court must view all facts in the light most favorable to the party against whom summary judgment is sought. *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003).

Defendants move for summary judgement against AHP on grounds that when the term "customer" is given its plain and ordinary meaning, it is clear that Connors did not solicit any customers, and therefore did not violate the non-compete Agreement. Defendants further argue that the agreement is a contract of adhesion, and that plaintiff has not suffered any damages.

AHP cross moves for Summary Judgment on the grounds that Connors's conduct and employment is in violation of the Agreement, and that Conners's counterclaim for payment for unused vacation time should be denied.

 II.  Choice of Law

The Agreement provides that it shall be construed under and governed by the laws of the State of Tennessee. Accordingly, I apply Tennessee law to the analysis of plaintiff's breach of contract claims.

 III. Breach of Contract

Under Tennessee law, as under New York law, the initial interpretation of a contract is a matter of law for the court to

decide. Merrimack Mut. Fire Ins. Co. v. Batts, 59 S.W.3d 142 (Tenn. Ct. App. 2001). See also K. Bell & Assoc., Inc., v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)(applying New York State law). In resolving disputes concerning contract interpretation, the court's task is to "ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn. 1999). In doing so, the court must first "determine whether the language of the contract is ambiguous." Planters Gin Co. v. Federal Compress & Warehouse Co., Inc., 78 S.W.3d 885, 890 (Tenn. 2002). Under Tennessee law, when the terms of a contract are unambiguous, the interpretation of that contract is a matter of law for the court to decide. Planters Gin, 78 S.W.3d at 890.

Contract language is not ambiguous when it has a definite and precise meaning that is unattended by the danger of misconception. Planters Gin, 78 S.W.3d at 890. Terms of a contract are not deemed ambiguous solely because the parties, as in the instant case, urge different meanings for the terms. Johnson v. Johnson, 37 S.W.3d 892, 896 (Tenn. 2002). If the language of a contract unambiguously conveys the parties' intent, extrinsic evidence may not be considered for interpretation. Planters Gin, 78 S.W.3d at 890.

In the instant case, the parties urge different constructions of the term "customer" as used in the Agreement. As stated above, the non-compete agreement entered into by Connors prohibits, in

most relevant part, solicitation of "any of the customers of the Company that were served by [Connors] during [his] employment ..." Plaintiff contends that the term "customer" includes hospital and nursing home doctors, nurses, and administrative personnel who recommended to patients equipment that they could purchase. Defendants contend that the term customer refers only to those persons who purchased equipment from the AHP. For the reasons set forth below, I find that the term "customer" as used in the Agreement is not ambiguous, and refers only to those persons who make equipment purchases from AHP, not persons who recommend AHP equipment to patients or refer customers to AHP.

The contract itself does not define the term "customer". The term "customer" is, however, defined by the dictionary as "one that purchases a commodity or service." Webster's Ninth New Collegiate Dictionary at p. 318 (1985). <u>See also</u>, American Heritage Dictionary of the English Language, Fourth Edition, Houghton Mifflin Company, 2000 (defining "customer" as "one who buys goods or services.") The dictionary definitions of the term "customer" are consistent with that term as used in the contract, and there is no evidence in the record to suggest that the term "customer" has a specialized meaning or use in the durable medical care goods business in the Corning New York area or in any other area. Moreover, AHP has failed to produce any evidence that the parties understood the term "customer" to have any meaning other than its

normal and customary meaning. Because the term "customer" is unambiguous, I decline to resort to extrinsic evidence to define its meaning. I therefore define the term "customer" in accordance with its ordinary meaning, and hold that the term "customer" means "one who buys goods or services".

Having found that the Agreement is not ambiguous, and having defined the term "customer" as meaning "one who buys goods or services", the court must now determine whether or not Connors breached the Agreement by soliciting AHP customers. The uncontroverted evidence in the record demonstrates that while Connors did make marketing calls on hospital and nursing home personnel, and that Connors asked hospital and nursing home representatives to recommend Pro2Cair equipment, he did <u>not</u> solicit, directly or indirectly, those persons who purchased goods or services from AHP. Because Connors did not solicit the customers of AHP, he did not violate the terms of his non-compete agreement.

### III. <u>Unfair Competition</u>

I find that because there has been no breach of the contract, AHP has failed to establish that Pro2Cair has engaged in unfair competition.

### IV. <u>Vacation Pay</u>

Defendant Connors asserts a Counterclaim seeking compensation for approximately three weeks of unused vacation time that he had

accrued at the time he was terminated from his employment. He contends that he is entitled to compensation for the unused time, and that he did not receive payment for his unused vacation time.

However, the terms of AHP Employee Handbook, which Connors specifically acknowledged agreeing to, provide that upon termination from employment, an employee will not receive payment for unused vacation time. Therefore there is no basis for Connors' claim for unpaid vacation time, and I dismiss Connors' Counterclaim.

## **CONCLUSION**

For the reasons set forth above, I hereby grant defendants' motion for summary judgment, and dismiss plaintiff's breach of contract and unfair competition claims. I deny plaintiffs' cross-motion for summary judgment with respect to its claims for breach of contract and unfair competition. I grant plaintiff's motion for summary judgment with respect to defendant Connor's claim for unpaid overtime, and dismiss Connor's Counterclaim. As a result, plaintiff's Complaint is dismissed in its entirety with prejudice, and Connor's Counterclaim is dismissed in its entirety with prejudice. There being no further claims to adjudicate, I direct the Clerk of the Court to issue a final judgment in accordance with this decision and close this case.

ALL OF THE ABOVE IS SO ORDERED.

                              S/ Michael A. Telesca
                              _____
                                MICHAEL A. TELESCA
                              United States District Judge

Dated:   Rochester, New York
           December 4, 2006